**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

IN RE:

Debra Scott Mack,

Debtor.

C/A No. 22-02503-DD

Chapter 13

**ORDER OVERRULING OBJECTION TO PLAN**

This matter comes before the Court regarding South Carolina State Housing Finance and Development Authority's ("Creditor") Objection to Confirmation (Dkt. No. 11; the "Objection") of Debra Scott Mack's ("Debtor") Chapter 13 Plan (Dkt. No. 9; the "Plan"). Specifically, Creditor objects to the provision proposing to cure a default under a mortgage loan executed by Debtor's mother, now deceased. A confirmation hearing was previously held before this Court on December 8, 2022 (the "December Hearing"). The Court heard arguments and invited the parties, including the chapter 13 trustee (the "Trustee"), to submit informal briefing on the matter. The parties submitted a Joint Statement of Dispute (Dkt. No. 28; the "Joint Statement") on January 3, 2023, delineating Debtor's and Creditor's contentions, respectively. On January 13, 2023, the Trustee filed a Correspondence (Dkt. No. 31) positing the applicable state law, which has greatly aided this Court in its decision and the preparation of this Order. For the reasons set forth below, Creditor's Objection is overruled.

First raised at the December Hearing, the issue before the Court is—where the prior owner died intestate—whether a deed of distribution is required under South Carolina law to pass an interest in real property to an heir or if the interest passed by operation of law. In the Joint Statement, the parties have stipulated the following facts:

1

    i.    Debtor is the daughter of the Alberta H. Scott ("Decedent"), who was the owner of 323 Sumter Street NE in Aiken South Carolina (the "Subject Property") until Decedent's passing;

    ii.    Prior to her passing, Decedent executed and delivered a promissory note and mortgage encumbering the Subject Property;

    iii.    Creditor is the holder of that mortgage;

    iv.    Decedent died on May 11, 2020, before this bankruptcy case was filed[1] and did not have a will;

    v.    A probate estate was opened for Decedent and Debtor was appointed as the personal representative of the estate, but prior to the filing of Debtor's bankruptcy case, the Probate Court closed the estate due to the failure to pay certain fees due. No deed of distribution was executed as part of Decedent's probate estate.

The parties do not appear to dispute that the Subject Property is property of the estate or that the mortgage debt is a claim within the meaning of 11 U.S.C. §§ 1322(b)(2), (b)(5), (c)(2), or 101(5). Instead, Creditor's argument implicates privity of contract.

    The Objection asserts that confirmation of the Plan should be denied "[s]ince the Debtor is not on the Loan documents and there is no recorded Deed showing a name change indicating that Debtor has rights to the Estate." (Dkt. No. 11). Although *Johnson v. Home State Bank* is factually distinct from the case at hand, *Johnson's* definition of a "claim" is directly linked to the resolution of Creditor's privity of contract argument. In *Johnson,* the Supreme Court held that a debtor—who was not personally liable on a mortgage—could pay the mortgage through the debtor's chapter 13 plan. *Johnson v. Home State Bank,* 501 U.S. 78 (1991). The *Johnson* debtor initially filed a chapter 7 bankruptcy petition and was subsequently discharged of all personal liability under his mortgage. *Id.* at 80. After the conclusion of the chapter 7 case, the state court entered an *in rem* judgment for approximately $200,000.00 in favor of the mortgagee, and the

---

[1] This bankruptcy case was filed September 15, 2022.

mortgagee subsequently attempted to foreclose on the debtor's farm. *Id.* Before the foreclosure sale occurred, the debtor filed a chapter 13 petition. *Id.* at 81. The debtor listed his mortgage as a claim against his estate. *Id.* The mortgagee objected to its inclusion in the chapter 13 case. *Id.* The mortgagee argued that since the debtor's previous chapter 7 case discharged the debtor's personal liability on the mortgage, the mortgagee no longer had a "claim" against the debtor. *Id.*

The Supreme Court disagreed, "concluding that a mortgage interest that survives the discharge of a debtor's personal liability is a 'claim' within the terms of § 101(5)." *Id.* at 84. The Supreme Court relied upon its previous finding in *Davenport* that "Congress intended by [§ 101(5)(A)'s] language to adopt the broadest available definition of 'claim.'" *Id.* at 83 (citing *Pennsylvania Department of Public Welfare v. Davenport,* 495 U.S. 552, 558, 563–64 (1990)). Similarly, *Davenport* determined that the "right to payment" under § 101(5)(A) means "nothing more nor less than an enforceable obligation." *Id.* (citing *Davenport,* 495 U.S. at 559). Given the broad definition of a "right to payment," the Supreme Court determined that "[e]ven after the debtor's personal obligations have been extinguished, the mortgage holder still retains a 'right to payment' in the form of its right to the proceeds from the sale of the debtor's property." *Id.* at 84. In this case, Creditor has an *in rem* claim against Debtor's property. Accordingly, based on *Johnson,* the Court determines that Creditor has a claim that is subject to inclusion within Debtor's bankruptcy plan.[2]

Creditor's assertion that the absence of a deed of distribution should prevent Debtor from treating the mortgage obligation in the Plan is also without merit. South Carolina has long held that title to real property passes immediately to the heir or devisee upon a property owner's

---

[2] In arriving at such conclusion, the Court also finds the reasoning of *In re Brown*, 428 B.R. 672 (Bankr. D.S.C. 2010) persuasive, which held that a reverse mortgage may be cured in the bankruptcy case of an heir or devisee who received an interest in the mortgaged property upon the passing of the mortgagee.

death, regardless of whether the property owner died intestate or testate, subject only to the personal representative's authority to sell the real property in satisfaction of the creditor claims of the decedent.[3] This was codified in 1986 by the South Carolina Legislature in S.C. Code Ann. § 62-3-101, which provides the following:

> *Upon the death of a person, his real property devolves to the persons to whom it is devised by his last will* or to those indicated as substitutes for them in cases involving lapse, renunciation, or other circumstances affecting the devolution of testate estates, *or in the absence of testamentary disposition, to his heirs*, or to those indicated as substitutes for them in cases involving renunciation or other circumstances affecting the devolution of intestate estates, subject to the purpose of satisfying claims as to exempt property rights and the rights of creditors, and the purposes of administration, particularly the exercise of the powers of the personal representative under Sections 62-3-709, 62-3-710, and 62-3-711 . . . .

S.C. Code Ann. § 62-3-101 (2022) (emphasis added). In other words, title immediately passes to the heir or devisee upon death subject only to a potential divestment upon any exercise of authority by a personal representative of the decedent; however, neither the probate estate nor the personal representative receives title or ownership to real property.[4] *See* S.C. Code Ann. § 62-3-

---

[3] *See, e.g., Executory of Crosland v. Murdock*, 15 S.C.L. (4 McCord) 217, 218 (1827) ("The executor derives his powers over the goods of his testator from the grant of the ordinary, but not so with regard to lands devised, or an authority to sell lands. These the devisee takes directly under the will, and immediately from the testator. The fee cannot be in abeyance, and on his death it vests *eo instanti*."); *Taylor v. Jennings*, 233 S.C. 600 (1958) ("'Since the fee cannot be in abeyance, a devisee of land takes under the will directly from the testator immediately on his death. Such title, therefore, vests on the death of the testator, and not at the probate of the will. The probate, whenever it occurs, relates back to the death of the testator." (quoting *Satcher v. Grice*, 53 S.C. 126, 128 (1898))); *Carter v. Wroten*, 187 S.C. 432, 435 (1938) ("By the common law, and under the statutes in most of the states, the title to real property vests in the heirs immediately on the death of the intestate, subject in most jurisdictions, as in South Carolina, to the exercise of such special powers as may be conferred upon the administrator by statute, such as the right to sell for payment of debts.").

[4] The immediate transfer of title of real property in South Carolina upon the death of a property owner is subject to the authority of the personal representative established under three code sections of the South Carolina Probate Code:
- Section 62-3-709 provides that "every personal representative has a right to, and shall take possession or control of, the decedent's property, except that any real property or tangible personal property may be left with or surrendered to the person presumptively entitled thereto unless or until, in the judgment of the personal representative, possession of the property by him will be necessary for purposes of administration."

4

711 S.C. Reporter's Comment (2022) ("Under [Section 62-3-711], [Section 62-3-101], and [Section 62-3-709], title to personal property (as well as real property) devolves at or soon after death to heirs and devisees, and not to the personal representative."); *Meredith v. Stoudemayer*, 2004 WL 6248289, at *3 (S.C. Ct. App. Jan. 14, 2004) ("Thus, while a devisee's title to real property remains subject to the personal representative's handling of administrative costs and creditor's claims, the personal representative never actually takes title to the devised real property.").[5] This statute follows the common law in holding that title to real property cannot be held in abeyance, which has remained good law since the adoption of S.C. Code Ann. § 62-3-101 in 1986. *See Abrams v. Templeton*, 320 S.C. 325, 330 (Ct. App. 1995) ("Title to real estate cannot be held in abeyance; it must be vested somewhere.").

In the present matter, a probate estate was opened for Decedent and Debtor was appointed as the personal representative of the estate. Prior to Debtor's filing of her bankruptcy case, the probate estate was closed without being fully administered. Therefore, while the property may remain subject to the potential authority of any future appointment or reappointment of a personal representative for the estate of Decedent, it appears that an interest in the Subject Property has passed to Debtor immediately upon the death of Decedent pursuant to South Carolina statutes and case law. This is consistent with South Carolina law holding that title to real property must not be held in abeyance. *See Estate of Anderson v. Greene*, 2006 WL 7285724, at *2 (S.C. Ct. App. Feb. 17, 2006) ("In fact the proof of death of an intestate decedent raises the presumption that his real property descended to his heirs." (quoting 28 S.C. Jur.

---

- Section 62-3-710 provides that the personal representative has the power to avoid certain transfers that would be void or voidable as against the decedent's creditors.
- Section 62-3-711 provides that "a personal representative has the same power over title to property of the estate that an absolute owner would have, in trust however, for the benefit of the creditors and others interested in the estate."

[5] This opinion is unpublished and, therefore, of no precedential value, but is nonetheless insightful on how South Carolina courts view the transfer of real property upon death of an owner.

5

Descent & Distribution § 24));[6] *Anderson Brothers Bank v. Estate of Betty S. Taylor*, C/A No. 2018-CP-26-03514, slip op. at 5 (Horry Cnty. Ct. of Comm. P. Mar. 6, 2016) ("Although no probate estate has been opened, pursuant to South Carolina probate laws of intestate succession, Ms. Taylor's ownership interest in the Mortgage Premises passed to her heirs-at-law upon her death.").

The Court's research reflects that the execution of a deed of distribution is not a requirement under South Carolina law to transfer an interest in real property after the death of an owner who dies intestate. In 1986, the South Carolina Legislature enacted S.C. Code Ann. § 62-3-907, which requires the execution of deeds of distribution for real property as part of the administration of a probate case. Specifically, the South Carolina Probate Code provides:

> (A) If distribution in kind is made, the personal representative must execute a deed of distribution with respect to real property . . . assigning, transferring, or releasing the assets to the distributee as evidence of the distributee's title to the property.
> (B) If the decedent dies intestate or devises real property to a distributee, the personal representative's execution of a deed of distribution of real property constitutes a release of the personal representative's power over the title to the real property, which power is equivalent to that of an absolute owner, in trust, however, for the benefit of the creditors and others interested in the estate, provided by Section 62-3-711(a).

S.C. Code Ann. § 62-3-907 (2022). A close reading of this statute shows that, in the circumstances of intestate succession, the deed of distribution serves as a release of the personal representative's power over the real property provided under § 62-3-711. This statute does not expressly state that the deed of distribution is required to transfer title in circumstances involving

---

[6] The Court notes that, like *Meredith*, this is an unpublished opinion of the Court of Appeals of South Carolina and has no precedential value, but is nonetheless instructive on issues involving property rights and intestate succession.

intestate succession, but that the deed of distribution serves as evidence of title.[7] The Court of Appeals of South Carolina, in an unpublished opinion, addressed a prior version of S.C. Code Ann § 62-3-907 that is nearly identical to subsection (a) of the present version of the statute,[8] and elaborated on the purpose of deeds of distribution, stating the following:

> Giving the statute its plain meaning, the deed of distribution is "evidence" of a distributee's title; it is not the method by which a distributee takes title.
>
> Moreover, through its use of the words "assigning, transferring, or releasing," the Probate Code plainly anticipates deeds of distribution as having three possible effects. As relates to distributions of real property, however, that function can neither be one of assignment nor of transfer because the Probate Code unmistakably establishes that title to real property is transferred at the time of the testator's death. S.C. Code Ann. § 62-3-101 (Supp. 1987). Thus, as relates to real property, the deed of distribution carries the third function—that of release. That is, the deed of distribution acts as an official declaration that the property is no longer subject to the personal representative's handling of administrative costs, creditors' claims, and the like.
>
> In sum, title to the real property passed to [the Devisee] immediately upon the death of his father. The subsequently executed deed of distribution merely evidenced [the Devisee's] title to the land while also acting as an official release of the land from the personal representatives' administrative control.

*Meredith v. Stoudemayer*, 2004 WL 6248289, at *3–4 (S.C. Ct. App. Jan. 14, 2004). Therefore, it appears that in circumstances of intestate succession, the deed of distribution does not transfer title, but serves as evidence of an heir's title and a release of the personal representative's authority over the real property.

---

[7] The only portion of the statute that specifically states that a deed of distribution effects a transfer of title is subsection (c), which provides that the if the decedent's will devises real property to the personal representative, then the deed of distribution "constitutes a transfer of the title to the real property from the personal representative to the distributee . . . ." S.C. Code Ann. § 62-3-907(c) (2022).

[8] In 2000, the Legislature amended § 62-3-907 to add language that is similar to the present version's subsections (b) and (c).

In summary, based upon the stipulated facts, the Court finds Debtor holds an interest in the Subject Property as the daughter and heir of Decedent under South Carolina intestate succession laws. *See* S.C. Code Ann. § 62-2-103 (2022) ("The part of the intestate estate not passing to the surviving spouse under Section 62-2-102, or the entire estate if there is no surviving spouse, passes as follows: (1) to the issue of the decedent . . . ."). The Court's research reflects that this interest passed to Debtor immediately upon Decedent's death. While no deed of distribution has been issued, in keeping with South Carolina law's requirement that real property is not held in abeyance, Debtor nonetheless received an interest in the Subject Property upon Decedent's death, although this interest remains subject to the potential authority of any future appointment (or reappointment) of a personal representative of Decedent's estate.

Section 541(a) of the Bankruptcy Code provides that the bankruptcy "estate is comprised of all the following property, wherever located and by whomever held: . . . all legal or equitable interest of the debtor in property as of the commencement of the case." In the absence of the issuance of a deed of distribution, an interest in the Subject Property passed to Debtor on the death of her mother, Decedent, as a matter of law under the South Carolina intestate statute.[9] As such, the same interest held by Debtor at the commencement of her case is now a part of her chapter 13 bankruptcy estate. Moreover, the Court notes that no evidence was presented at the December Hearing to demonstrate Debtor's ownership of the Subject Property would be disrupted if a probate case is ever resumed on behalf of Decedent.

---

[9] Debtor's interest in the real property remains subject to the authority of any personal representative who may be appointed for Decedent's estate.

On balance, the facts in the present matter are sufficient to permit treatment of Creditor's mortgage loan in Debtor's plan. For the reasons stated above, Creditor's Objection on the basis that its treatment under the plan is impermissible is overruled.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**02/09/2023**



Entered: 02/09/2023

David R. Duncan
US Bankruptcy Judge
District of South Carolina